J. A02015/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANTHONY J. SABELLA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ESTATE OF GUS MILIDES, | : | |
| MARY SHANNON, PERSONAL | : | No. 1262 EDA 2013 |
| REPRESENTATIVE AND | : | |
| BARBARA RUSH RENKERT | : | |

Appeal from the Judgment Entered March 18, 2013,
in the Court of Common Pleas of Northampton County
Civil Division at No. C-48-CV-2006-2450

BEFORE:  FORD ELLIOTT, P.J.E., OTT AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED AUGUST 20, 2014**

Appellant appeals the order entering summary judgment against him in his wrongful use of civil proceedings and abuse of process action against appellees.  Finding no error, we affirm.

The factual background is somewhat complex.  On May 21, 1990, appellant deeded a property ("the Property") located on Route 611 in Northampton County to Richard Ferrara, Theodore Ferrara, and Teddy P. Ferrara, who were doing business as RT&T Enterprises, Inc. ("RT&T"). Located on the Property was a motel and restaurant that sold alcoholic beverages.

_____

* Retired Senior Judge assigned to the Superior Court.

On October 3, 1992, Paul Abahazy was severely injured in a motorcycle accident after consuming alcoholic beverages at the Property. On March 16, 1993, Paul Abahazy and his wife ("the Abahazys") commenced a Dram Shop action against RT&T by Praecipe for Writ of Summons.[1]

On February 9, 1994, RT&T deeded the Property back to appellant for $1.00, but paid a realty transfer tax of $2,899.62, reflecting that the Property had an actual value greater than $1.00. On August 21, 1997, appellant deeded the Property to John Sabella, appellant's brother, and John Fedele. On August 31, 2000, John Sabella and Fedele deeded the Property to Eric Schultheis and Andrew Barr.

On March 19, 2003, the trial court awarded the Abahazys a total of $865,000 in damages in their Dram Shop action against RT&T.[2] On January 9, 2004, the Abahazys instituted an action pursuant to the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA") against appellant, RT&T, the Ferraras individually, John Sabella, John Fedele, Eric Schultheis, and Andrew Barr seeking to set aside the conveyances in order to use the Property to satisfy the Dram Shop award.

On April 7, 2004, appellant filed Preliminary Objections claiming the Property did not qualify as an asset under the PUFTA. On May 19, 2004,

---

[1] The action was discontinued without prejudice on September 19, 1994, and reinstated by Complaint that same day.

[2] A default judgment had earlier been entered against RT&T on September 15, 1995.

Eric Schultheis and Andrew Barr filed a motion for judgment on the pleadings, contending that the PUFTA action was barred by the statute of limitations. The motion cited an October 3, 2003 decision of this court which held that the four-year statute of limitations on a PUFTA action runs from the date of the conveyance and is not tolled by a creditor's pending lawsuit. *See K-B Building Co. v. Sheesley Construction, Inc.*, 833 A.2d 1132 (Pa.Super. 2003). Less than one month later, on June 15, 2004, the Abahazys filed a praecipe to terminate the PUFTA action. From an exchange of letters, it appears that counsel agreed that sanctions would not be sought against the Abahazys.

On April 3, 2006, appellant instituted the present action for wrongful use of civil proceedings and abuse of process against the Abahazys' attorneys, appellees herein.[3] On October 15, 2012, appellees filed a motion for summary judgment; and on March 18, 2013, the trial court granted the motion. This timely appeal followed.

Appellant raises the following issues on appeal:

1.  Did the trial court erroneously grant summary judgment based upon oral testimony in violation of the rule of Nanty Glo Borough v. American Surety Co., 309 Pa. 236, 163 A.2d 523 (1932) and its progeny?

2.  Did the trial court view the record in a light most favorable to Appellant accepting as true all well pleaded facts in his pleadings giving him the benefit of all reasonable inferences to

---

[3] One of those attorneys has died and is represented by his estate.

be drawn from his pleadings and deposition testimony?

3.     Does the deposition testimony of Barbara Rush Renkert and John R. Vivian, Jr. establish that Appellees filed the 2004 suit in pursuit of "what they believed to be a meritorious PUFTA claim for the legitimate purpose of collecting on the substantial Dram Shop judgment" as factually found by the trial court?

4.     Should the trial court have applied the "Primarily for a purpose other than that of securing the proper . . . adjudication of a claim" test required by 42 P.S. § 8351(a)(1) in granting Appellees summary judgment?

5.     Did the trial abuse court abuse its discretion in ruling that Appellant did not present any evidence of Appellees' improper purpose?

Appellant's brief at 3.

Our standard of review with respect to a trial court's decision to grant or deny a motion for summary judgment is as follows:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an

> issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Gilbert v. Synagro Cent., LLC*, 90 A.3d 37, 41-42 (Pa.Super. 2014), quoting *JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1261-1262 (Pa.Super. 2013).

Although appellant sets forth his appellate claims as five separate issues, his central theory is that the trial court erred in granting summary judgment based upon appellant's failure to adduce sufficient evidence that appellees acted with an improper purpose when they filed the PUFTA lawsuit. We will first review this central theory.

The trial court found that a failure to show evidence of improper purpose established an entitlement to summary judgment as to both wrongful use of civil proceedings and abuse of process. (*See* Opinion of the Court, 3/18/13 at 10-11 (wrongful use of civil proceedings); Pennsylvania Rule of Appellate Procedure 1925(a) Statement, 6/6/13 at 4 (abuse of process).)

Indeed, both of the torts of wrongful use of civil proceedings and abuse of process contain an "improper purpose" element that must be proven:

**§ 8351.  Wrongful use of civil proceedings**

**(a)** **Elements of action.**--A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1)    He acts in a grossly negligent manner or without probable cause and <u>primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based</u>; and

(2)    The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S.A. § 8351(a) (underlining emphasis added).

The tort of "abuse of process" is defined as the use of legal process against another primarily to accomplish a purpose for which it is not designed. To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) <u>primarily to accomplish a purpose for which the process was not designed</u>; and (3) harm has been caused to the plaintiff.

***Lerner v. Lerner***, 954 A.2d 1229, 1238 (Pa.Super. 2008) (underlining emphasis added), quoting ***Shiner v. Moriarty***, 706 A.2d 1228, 1236 (Pa.Super. 1998), ***appeal denied***, 729 A.2d 1130 (Pa. 1998).

In response to the motion for summary judgment, appellant filed an answer in which he alleged that appellees' improper purpose was an attempt to cover up their alleged malpractice in failing to timely file the PUFTA lawsuit:

> 9. Malice shown by allegation of an improper purpose in an actual conflict of interests with their clients in an attempt to cover-up their $865,000.00 legal malpractice resulting from their failure to file their fraudulent transfer claims with[in] the period of repose/limitations mandated by 12 P.S. § 5109 knowing that they were "out of luck." [Exhibit 2]

Plaintiff's Answer to Defendants [sic] Motion for Summary Judgment, 12/19/12 at 3.

We agree with the trial court that there is no evidence of an improper purpose in the filing of the PUFTA action and that it was filed simply to preserve assets to satisfy the Abahazys' Dram Shop award. Appellant has not submitted any evidence that appellees had any other purpose. For instance, there is no indication that appellees intended to harass appellant or

hoped to improperly gain some unrelated legal advantage.[4]  As examined *infra*, even if appellees were aware that the PUFTA action was beyond the statute of limitations when they filed it, that is not evidence of an improper purpose.

The facts also suggest that appellees were simply unaware at the time of filing the PUFTA action, of the then recent decision in *K-B Building* that rendered the PUFTA action untimely under the statute of limitations.  This is borne out by the fact that appellees withdrew their PUFTA suit less than a month after Schultheis and Barr filed their motion for judgment on the pleadings citing *K-B Building*.  While the trial court found that appellees' lack of knowledge of *K-B Building* when they filed the PUFTA action met the "without probable cause" element of wrongful use of civil proceedings, it did

---

[4]    If, however, the attorney acts without probable cause for belief in the possibility that the claim will succeed, and for an improper purpose, as, for example, to put pressure upon the person proceeded against in order to compel payment of another claim of his own or solely to harass the person proceeded against by bringing a claim known to be invalid, he is subject to the same liability as any other person.

*Korn v. Epstein*, 727 A.2d 1130, 1133 (Pa.Super. 1999), *appeal denied*, 743 A.2d 921 (Pa. 1999), quoting Restatement (Second) of Torts § 674, comment d.

not find that that same ignorance could be used to impute an improper purpose. We again agree.[5]

We now turn to other complaints raised by appellant's separate issues on appeal. Appellant complains that the trial court violated the rule in ***Borough of Nanty-Glo v. American Surety Co. of New York***, 163 A. 523 (Pa. 1932). ***Nanty-Glo*** essentially holds that summary judgment cannot be based upon testimony offered by the moving party as the credibility of such testimony is still a question for the jury. Appellant contends that the court's grant of summary judgment was based upon the oral testimony of appellee Renkert.

We do not find that summary judgment was based on appellee Renkert's testimony. The trial court examined the PUFTA complaint and concluded that its purpose was to recover assets to satisfy the Abahazys' Dram Shop award. (Rule 1925(a) Statement, 6/6/13 at 5-7.) The trial court also stated that appellant had supplied no evidence of a different purpose. (***Id.*** at 6.) The trial court then merely stated that appellee Renkert's testimony was consistent with this analysis. (***Id.*** at 7.) Thus, the

---

[5] We note that there are cases that state that an improper purpose <u>may</u> be inferred from a lack of probable cause. ***See Buchleitner v. Perer***, 794 A.2d 366, 377 (Pa.Super. 2002), ***appeal denied***, 808 A.2d 568 (Pa. 2002), citing ***Amicone v. Shoaf***, 620 A.2d 1222 (Pa.Super. 1993). However, we are aware of no case making such a finding required. Further, as the Legislature made lack of probable cause and improper purpose separate elements for wrongful use of civil proceedings, it would appear that the statute regards them as distinct elements requiring independent proof of both.

court's decision was not based on appellee Renkert's testimony, but instead, upon a separate analysis.

Appellant next contends that his testimony that appellees filed the PUFTA suit to cover up their malpractice constituted evidence of an improper purpose. Appellant is confusing his own self-serving opinion with evidence. Appellant was not a witness to any event that served to reveal that appellees were operating with an improper purpose when they filed the PUFTA action. Appellant merely surmises from the surrounding facts that appellees were acting with an improper purpose, but appellant fails to indicate what surrounding fact compels this conclusion. Simply stated, appellant's opinion is not evidence of an improper purpose.

Appellant next complains that none of the appellees testified as to their purpose in filing the PUFTA suit and that, therefore, the trial court's conclusion that they did not act with an improper purpose is not supported by the evidence. Appellees are not obligated to show that they had a proper purpose; rather, appellant is obligated to prove an improper purpose. The trial court's conclusion is based upon appellant's failure to meet this obligation. Appellant failed to adduce evidence of an improper purpose. Even if appellant's evidence shows that appellees knew that their PUFTA suit was beyond the statute of limitations when they filed it, that does not prove or indicate in the slightest that their purpose was other than to attempt to preserve assets to satisfy the Abahazys' Dram Shop award.

Appellant next argues that the trial court erred in employing an "improper purpose" test rather than the statutory "primarily for a purpose other than the securing of the proper . . . adjudication of the claim." We see no substantive difference between these tests. Indeed, the trial court stated that it used "improper purpose" as a shorthand reference for "primarily for a purpose other than the securing of the proper . . . adjudication of the claim." (Rule 1925(a) Statement, 6/6/13 at 7.)

To the extent that appellant's argument suggests that where the evidence proves the element of lack of probable cause it compels the inference of improper purpose, we disagree. As previously noted, cases have held that where there is a lack of probable cause, an improper purpose <u>may</u> be inferred. We are aware of no case that compels the inference. Instantly, the trial court's conclusion that appellees lacked probable cause to file the PUFTA suit was the trial court's conclusion that appellees should have been aware of **K-B Building** and that the statute of limitations was an obstacle to the success of such action. We agree with the trial court that this failure by appellees does not merit the inference of an improper purpose in filing the suit.

Even if appellees were demonstrably aware of **K-B Building** and the statute of limitations, we would find a lack of probable cause, but not an inference of improper purpose. The statute of limitations is not an absolute bar to bringing a successful suit. If it were, then an inference of improper

purpose might be justified. However, the statute of limitations is merely an affirmative defense that must be pleaded. Pa.R.C.P., Rule 1030(a), 42 Pa.C.S.A. Therefore, appellees' PUFTA action was not without the possibility of success and does not merit an inference of improper purpose. Moreover, as appellees argue, an attorney could still in good faith file a PUFTA action knowing it was untimely under *K-B Building*, in order to appeal the decision and argue for the reversal of *K-B Building*.

Finally, appellant argues the trial court,

> [d]id not consider the fact that Judge Franciosa's previous March 19, 2003 rejection of Appellees' claim that the February 9, 1994 deed to Appellant was a fraudulent transfer and apply res adjudicata to the RT&T defendants who were named as parties in the Dram Shop suit and apply collateral estoppel to Appellant who was not a party in the Dram Shop suit;

Appellant's brief at 54.

During their Dram Shop suit, the Abahazys had requested that the court pierce the corporate veil of RT&T and find the individual owners liable based upon the fraudulent transfer of the Property back to appellant. Judge Michael V. Franciosa declined to do so because appellees had failed to prove a fraudulent transfer. Appellant appears to be arguing that the Dram Shop decision precluded the subsequent PUFTA action either through *res judicata* or collateral estoppel. This issue was not raised in Plaintiff's Statement of Matters Complained of on Appeal; consequently, the issue is waived. Pa.R.A.P., Rule 1925(b)(4)(vii), 42 Pa.C.S.A.

In sum, we agree with the trial court that appellant presented no evidence that appellees instituted the PUFTA action for an improper purpose. Without such evidence, appellant could not maintain a suit for either wrongful use of civil proceedings or abuse of process. Summary judgment was properly entered.

Order granting summary judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2014